UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CEDRIC CHISM,

    Plaintiff,

v.

FRANCISCO QUINTANA, et al.,

    Defendants.

Civil Action No. 5: 18-393-KKC

**MEMORANDUM OPINION AND ORDER**

\*\*\* \*\*\* \*\*\* \*\*\*

Cedric Chism is an inmate in federal custody and has filed an amended complaint asserting civil rights claims against federal officials pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). [R. 15] This matter is before the Court to screen the complaint as required by 28 U.S.C. §§ 1915(e)(2), 1915A. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012).[1]

**I**

Through his complaint and its attachments, Chism indicates that prior to his incarceration his cardiologist implanted a pacemaker/cardioverter defibrillator in his heart. In addition, his cardiologist gave him a Medtronic MyCareLink Monitor. The monitor consists of a small external handheld device that receives wireless signals from the pacemaker when placed over the heart.

---

[1] When testing the sufficiency of the plaintiff's complaint, the Court affords it a forgiving construction, accepting as true all non-conclusory factual allegations and liberally construing its legal claims in the plaintiff's favor. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012). A district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Hill v. Lappin*, 630 F. 3d 468, 470-71 (6th Cir. 2010).

The device is then placed in a wired docking station, which can then transmit the data that was received from the pacemaker/monitor to the cardiologist's office over a secure internet connection. In addition, the cardiologist can request detailed information from the pacemaker by "interrogating" the monitor, something typically done every six months.[2] [R. 17-1 at Page ID #156]

When Chism self-surrendered to the Federal Medical Center ("FMC-Lexington") on February 21, 2018, to begin a two-year prison term, he brought the monitor with him. However, Officer S. Reid confiscated the device because of security concerns given its ability to wirelessly communicate data through Wi-Fi. Medical staff indicated that they would consider whether Chism would be permitted to keep the monitor while in prison. Chism complains that throughout March and April 2018 nurse Amy Moore, nurse Lake, Dr. Terre Adams, and Captain S. Potter failed to promptly and clearly communicate whether he would be permitted to retain his monitor while incarcerated. [R. 15 at Page ID #74-77]

On March 1, 2018, BOP medical staff obtained copies of Chism's prior medical records. At this time Chism's cardiologist recommended merely that his pacemaker be "interrogated" for data in May 2018 and every six months thereafter. During Chism's incarceration his medical care and heart condition would be provided and managed by BOP medical staff, who did not have access to data from the monitor. For that reason, and because of the security risk posed by having an inmate in possession of a portable device capable of wirelessly transmitting data, the BOP determined that Chism could not keep the monitor and that it would be shipped to a destination of his choosing. [R. 17-1 at Page ID # 145, 156-57]

---

[2] See https://www.medtronic.com/us-en/patients/treatments-therapies/remote-monitoring/available-monitors/mycarelink-patient.html and https://www.medtronic.com/us-en/patients/treatments-therapies/remote-monitoring.html (last visited on March 12, 2019).

On April 30, 2018, nurse M. McDaniels asked Chism to provide him with an address where the monitor could be mailed. Chism stated that he disagreed with the decision to disallow his possession and use of the monitor, and refused to provide McDaniels, Major J. Chanay, Hospital Services Administrator C. Bush, or anyone else with an address where it could be shipped. During the first week of May, Assistant Warden Cosmore advised Chism that his BOP physician was considering permitting him to use an alternative monitor; however, that alternative had been ruled out by May 8, 2018. After Chism repeatedly refused to provide a mailing address on May 10, 2018, later that month McDaniels mailed the monitor to Medtronic, its manufacturer. [R. 15 at Page ID #78-81, 89; R. 17-1 at Page ID #161]

On May 1, 2018, Chism filed an informal grievance challenging the decision to disallow the monitor. Chism complains that three days later Unit Manager Murphy refused to provide him with a formal grievance form until his informal grievance was addressed. During this period Chism also complained informally to Warden Quintana. On a separate occasion, assistant warden Cosmore directed Chism to obtain grievance forms from Murphy as his Unit Manager. By May 9, 2018, Murphy had addressed Chism's prior informal grievance and gave him two forms used to file a formal inmate grievance to the warden (Form BP-229). However, Chism alleges Murphy refused to provide him with a sensitive Form BP-230 on that day.[3] [R. 15 at Page ID #78, 80, 82-84; R. 17-1 at Page ID #159]

---

[3] Where an inmate is concerned that raising an issue at the institutional level might place him at risk, he may file a "sensitive" grievance to the appropriate regional office. 28 C.F.R. § 542.14(d).

In many instances throughout his complaint Chism asserts that he wished to (or actually did) file a sensitive Form BP-229 (sometimes colloquially referred to as a "BP-9") with the warden. However, no such document or procedure exists under the BOP's Inmate Grievance Process. See BOP Program Statement 1330.18 (2014).

By May 18, 2018, Chism had completed his formal grievance regarding staff refusal to permit him to retain his external monitor. [R. 17-1 at Page ID #162-63] However, he alleges that Murphy refused to accept the Form BP-229 for filing three days later. The next day on May 22, 2018, Case Manager LeMay refused to accept the grievance form because only Murphy, as Chism's Unit Manager, was the appropriate officer to do so. [R. 15 at Page ID #83-84] After two more unsuccessful attempts to give Murphy the form because he was not in his office to accept it, Chism turned in the Form BP-229 to Murphy on May 24. However, Chism alleges that Murphy refused to provide him with a sensitive Form BP-230 after he told Murphy that he intended to file the grievance against him for interfering with his ability to file inmate grievances. Chism sought assistance from Lieutenant V. Miller, but Miller told him that only Murphy could provide him with the necessary form. [R. 15 at Page ID #85-87; R. 17-1 at Page ID #165-71]

Chism states that he was charged with a disciplinary infraction on May 31, 2018. Chism does not indicate what conduct led to the incident report nor does he identify with what he was charged. Instead, he states without explanation that Murphy filed the charge in retaliation for his attempt to file a sensitive grievance against Murphy. [R. 15 at Page ID #88-89]

Over several days from June 2-8, Chism sought to obtain a copy of his inmate account statement from Officer Queen. When he was repeatedly unsuccessful in locating Queen at his office to obtain the form, he sought assistance from counselor M. Chanay, Officer Lafferty, case manager LeMay, and Officer Hawkins, each of whom directed Chism back to Officer Queen. [R. 15 at Page ID #90-92; R. 17-1 at Page ID #178-79] On June 6, 2018, Chism mailed his original complaint in this action with an "affidavit of poverty" but not including a certificate of inmate account. [R. 1, 2]

On June 6, 2018, Chism filed a sensitive Form BP-230 with the regional office complaining that Murphy was interfering with his efforts to file inmate grievances. This grievance was received on June 11, 2018. See [R. 17-1 at Page ID #181] Two days later, Captain Carpenter placed Chism in protective custody. Carpenter indicated that he had received information that Chism feared for his safety, although Chism replied that he only feared retaliation from Murphy. Chism alleges that after he was placed in segregation, he complained to Officer Pearson and Major Parnell that he had a headache and felt dizzy because he had not received any of his medications that day, but neither officer ensured that he received his medication. On June 12th, Chism told Emergency Medical Technician Higgins that he had not received his medications for four days, and that he was assigned to an upper bunk notwithstanding a bottom bunk restriction. Chism states that Unit Manager Murphy did not respond to his request for a grievance form, a certificate of inmate account, and a legal phone call, and that on June 14th, M. Chanay and case manager Schneider refused to provide him with these things. Chism made the same request to Officer Lindon, whom he alleges did not provide "a detailed response." [R. 15 at Page ID #92-95]

On June 18th, Chism told E.M.T. Higgins that he had not received his medications since June 16th. On June 20th, and Murphy and Schneider refused to give Chism a grievance form, a certificate of inmate account or a legal phone call. That same day officers searched Chism's cell, and he asserts that they removed personal and legal documents from it. Notwithstanding the officer's alleged refusal to provide him with grievance forms, on June 22nd Chism filed a Form BP-229 complaining of Murphy's interference with his ability to file grievances. The same day, Chism handed Warden Quintana a letter regarding (1) Murphy's refusal to give him a grievance form, a certificate of inmate account, and a legal phone call; (2) the failure by medical staff to give him his prescription medications while in protective custody; and (3) the search of his cell and the

5

confiscation of documents from it. Two days later Chism filed another BP-229 complaining about the search of his cell. Chism was released from protective custody on June 26, 2018. [R. 15 at Page ID #96-101; R. 17-1 at Page ID #181-82, 185]

After a conversation with internal affairs officers Chase and Thomassen and upon his release from segregation, Chism was transferred to a different unit of the prison. Chism alleges that after another inmate told him that McDaniels had spoken with him about "getting Chism off his back," Chism relayed this conversation to internal affairs officer Thomassen, but no action was taken. [R. 15 at Page ID #102-04]

On July 6, 2018, the BOP's regional office denied Chism's appeal of his grievance regarding the confiscation of his monitor. [R. 17-1 at Page ID #184] Chism has not indicated whether he appealed this denial to the BOP's Central Office. Instead, ten days later he filed a second formal grievance with the warden regarding the same issue. [R. 17-1 at Page ID #183] Chism then filed his amended complaint in this action on July 25, 2018.

## II

As a preliminary matter, Chism identified 34 defendants by name at the outset of his complaint. [R. 15 at Page ID #65-71]. Toward the end of his complaint, Chism set forth at length his causes of action against 13 of these defendants in 94 numbered paragraphs. [R. 15 at Page ID #104-121] However, he makes no such effort to explain his claims against the other 21 persons he named as defendants.[4] Instead, he includes only a generic assertion that his rights under the First, Fifth, and Eighth Amendments "were violated by Defendants." [R. 15 at Page ID #104, 107, 119]

---

[4] These include Dr. Adams, HSA Potter, PA Stephanie Morris, case manager Hatfield, Lt. Miller, case manager Lemay, Capt. Carpenter, trust fund account manager Queen, officer Moschetti, officer Pearson, officer Gilbert, officer Hoagland, E.M.T. Higgins, nurse Parnell, nurse Moore, officer Lindon, unit manager Whitt, Lt. Shaver, officer Branscum, Lt. Thomassen, Lt. Chase, cashier Lafferty, and cashier Hawkins.

6

Chism's claims against these defendants are therefore subject to summary dismissal for failure to adequately state a claim for relief as required by Federal Rule of Civil Procedure 8. A complaint must set forth claims in a clear and concise manner, and must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010). Vague allegations that one or more of the defendants acted wrongfully or violated the plaintiff's constitutional rights are not sufficient. *Laster v. Pramstaller*, No. 08-CV-10898, 2008 WL 1901250, at *2 (E.D. Mich. April 25, 2008) ("Neither the Court nor Defendants are obligated to search through the Complaint and its voluminous exhibits in order to glean a clear and succinct statement of each claim for relief. It is Plaintiffs' responsibility to edit and organize their claims and supporting allegations into a manageable format."). In sum, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Of course, the Court has an obligation to liberally construe a complaint filed by a person proceeding without counsel, but that obligation does not extend so far as to require or permit it to create arguments or claims that the plaintiff has not made. *Coleman v. Shoney's, Inc.*, 79 F. App'x 155, 157 (6th Cir. 2003) ("Pro se parties must still brief the issues advanced with some effort at developed argumentation."); *Superior Kitchen Designs, Inc. v. Valspar Indus. (U.S.A.), Inc.*, 263 F. Supp. 2d 140, 148 (D. Mass. 2003) ("While the allegations of the complaint are construed favorably to the plaintiff, the court will not read causes of action into the complaint which are not alleged."). Here, Chism does not identify *what* rights under these constitutional amendments were violated or offer any explanation *how* each defendant violated that right. The claims against these 21 defendants are therefore subject to dismissal for failure to adequately articulate a claim for relief

under Federal Rule of Civil Procedure 8. *Grinter v. Knight*, 532 F. 3d 567, 577 (6th Cir. 2008); *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) ("More than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements.").

Further, Chism did not complete the process of exhausting his administrative remedies within the prison system before he filed suit. Federal law requires a prisoner to fully utilize the prison's inmate grievance system before filing suit to assert a civil claim regarding the conditions of his confinement. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). This requirement applies to any claim that arises out of any aspect of prison life, whether it involves general circumstances or particular episodes, and whether it alleges excessive force or some other wrong. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Because "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ...", *Woodford v. Ngo*, 548 U.S. 81, 90 (2006), a prisoner must file an initial grievance and any appeals within the time frames required by the prison's grievance procedure.

The BOP grievance process is set forth at 28 C.F.R. §§542.10-.19 (2005). That procedure includes a process for informal resolution, 28 C.F.R. §542.13(a), but independently requires the inmate to seek formal administrative review with the warden, then the regional office, then the BOP's Central Office. 28 C.F.R. §§ 542.14(a), .15(a).

In this case, Chism filed a formal grievance with the warden regarding his external monitor on May 24, 2018. [R. 17-1 at Page ID #162-63] Less than two weeks later, Chism filed his original complaint in this action on June 6, 2018, in which he complained both of the confiscation of his external monitor and alleged interference with his ability to file inmate grievances. [R. 1] The

8

BOP's regional office issued its response regarding the confiscation of Chism's monitor on July 6, 2018, a full month *after* Chism had filed his complaint in this action. [R. 17-1 at Page ID #184] The Sixth Circuit has made clear that a prisoner must complete the entire administrative remedy process, including any appeals, *before* he files suit:

> While we recognize that plaintiff made some attempts to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed. The plain language of the statute makes exhaustion a precondition to filing an action in federal court. ... The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit.

*Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (citations omitted). Because it is clear that Chism failed to pursue his available appeals to completion before he filed suit, he did not satisfy the exhaustion requirement of 42 U.S.C. § 1997e(a). *Liggett v. Mansfield*, 2009 WL 1392604, at *2-3 (E.D. Tenn. May 15, 2009) ("A prisoner who files a grievance but does not appeal to the highest possible administrative level, does not exhaust available administrative remedies.") (*citing Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999)). Chism's complaint is therefore subject to dismissal for failure to exhaust administrative remedies with respect to his claim regarding his external monitor.

As for his complaints regarding interference with the BOP's inmate grievance process, on June 6, 2018 – the same day he filed his complaint – Chism filed a sensitive Form BP-230 with the regional office complaining that Murphy was interfering with his efforts to file inmate grievances. This grievance was received on June 11, 2018. See [R. 17-1 at Page ID #181] As with his unexhausted claim regarding his monitor, Chism did not permit the administrative review process regarding his complaints about Murphy's conduct to follow its nature course to completion before filing suit. This claim, too, is subject to dismissal on the same basis.

Chism clearly failed to exhaust his administrative remedies, but he complains that Murphy and others effectively rendered the BOP's Inmate Grievance Program wholly "unavailable" to him. [R. 15 at Page ID #71-73] First, Chism notes that he sent numerous informal requests to a plethora of staff members using the BOP's electronic TRULINCS interface. *Id*. at Page ID #71-72. Such messages may be a helpful means of posing questions or resolving problems, but they do not satisfy the formal exhaustion requirement. *Woodford*, 548 U.S. at 92-94.

Second, Chism has alleged that on several occasions Murphy refused to provide him with a grievance form upon his request or refused to immediately accept it for filing, and that other officers refused to perform these functions because it was Murphy's role, as Chism's Unit Manager, to do so. At this juncture the Court assumes all of these allegations to be true, and the alleged conduct appears to be plainly inconsistent with the BOP's process for carrying out its Inmate Grievance Program. See BOP Program Statement 1330.18 (2014). They did not, however, render the grievance process "unavailable" to Chism.

Section 1997e(a) requires a grievance system to be "available" to inmates, but that means only that it must be "capable of use to obtain some relief for the action complained of." *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1859 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 737 (2001)). A grievance process may be "unavailable" where, for example, prison officials prevent inmates from filing grievances through intimidation or misrepresentation. *Ross*, 136 S. Ct. at 1860. Of course, a prisoner must make a meaningful effort to follow the grievance process before the asserted unavailability of the procedure becomes relevant. *Napier v. Laurel Cnty.*, 636 F.3d 218, 223-24 (6th Cir. 2011).

Chism's argument that the BOP grievance process was "unavailable" to him is unavailing. First, Murphy's alleged failure to provide Chism with a standard grievance form on a handful of

occasions is not sufficient, without more, to demonstrate that the grievance process was rendered wholly unavailable to him. To be sure, as long as Chism was not abusing the grievance process, such forms should have been provided to him. But "even if the normal BOP forms used to initiate the grievance process were not available, ordinary letters or notes may be used to invoke the grievance process if necessary ..." *Harris v. PA A. Ndife*, No. 06-CV-223-GFVT, 2006 WL 3469552, at *3 (E.D. Ky. 2006); *Jenkins v. Raub*, 310 F. Supp. 2d 502 (W.D.N.Y. 2004). In addition, a plaintiff's "bald assertion that [the grievance coordinator] refused to give him grievance forms is not enough to excuse the complete absence of evidence that he attempted to exhaust his administrative remedies for the many claims he raised in his district court complaint." *Arbuckle v. Bouchard*, 92 F. App'x 289, 291 (6th Cir. 2004). See also *Belser v. James*, No. 16-2578, 2017 WL 5479595, at *2 (6th Cir. June 6, 2017) (holding that prisoner's "generalized statements" that prison officials "would not process none of the grievances" was "insufficient to create a genuine dispute of material fact as to whether the administrative process was available" to the inmate); *Belser v. Woods*, 2018 WL 6167330, at *2 (6th Cir. July 6, 2018) (holding that inmate's allegation that grievance coordinator would not respond to his appeals was insufficient to render grievance process unavailable where regulation permitted inmate to proceed to the next step when no timely response to grievance was given).

In addition, Chism affirmatively alleges that he was able to obtain "unorthodox access to BP-9 and BP-10 remedy forms, procured through an inmate who was in unauthorized possession of the forms." [R. 15 at Page ID #71] And as noted above, Chism was able to actually complete and file those inmate grievance forms to assert his claims regarding both his external monitor and the alleged interference with the grievance process. [R. 17-1 at Page ID #162-63, 181, 183-84]

11

Chism's own records demonstrate that he was able to file grievances regarding his concerns, and hence that the process was not unavailable to him.

In addition to these procedural shortcomings, Chism's allegations also suffer from more substantive defects. Chism's first set of claims asserts that in May and June 2018, Murphy violated unidentified rights under the First and Fifth Amendments because on a number of occasions he failed or refused to provide Chism with a grievance form; on one occasion would not accept a completed grievance form for filing; and in one instance did not provide him with a copy of his inmate account statement, postage stamps, or a "legal phone call." [R. 15 at Page ID #104-05, 107-110, 112] Chism further contends that defendants Cosmore and Miller violated his constitutional rights when they failed to ensure that he received formal grievance forms. [R. 15 at Page ID #106, 110-11] He also asserts claims under the First and Fifth Amendment against defendants Chanay and Schneider because they did not provide him with grievance forms, and in one instance did not provide him with a copy of his inmate account statement, postage stamps, or a "legal phone call." [R. 15 at Page ID #106, 110-12] Chism further complains that defendant wardens Toney and Quintana did not promptly decide his formal grievance; did not train and/or adequately supervise their staff to ensure that they followed the prison's grievance procedures; and failed to ensure that their staff provided Chism with a legal phone call and stamps. [R. 15 at Page ID #113-18]

Through his reference to the Fifth Amendment, Chism's allegations could be liberally construed to assert a claim that staff violated his due process rights by failing to properly process his inmate grievances. But it is well-established that inmates have no constitutional right to have a grievance process at all, and thus they have no due process right to one that functions in a timely or effective manner. *Argue v. Hoffmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) ("[T]here is no inherent constitutional right to an effective prison grievance procedure.") (citing *Hewitt v. Helms*,

459 U.S. 460, 467 (1983)); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure). See also *McCalla v. United States*, No. 5: 15-CV-387-JMH, 2016 WL 1698295, at *6 (E.D. Ky. Apr. 27, 2016); *Davidson v. Federal Bureau of Prisons*, No. 5: 15-351-JMH, 2017 WL 1217168, at *13 (E.D. Ky. Mar. 31, 2017), *aff'd*, 2017 WL 8897005 (6th Cir. Nov. 29, 2017). A prisoner's allegation that she was hampered in her ability to pursue inmate grievances may be grounds to excuse a failure to exhaust administrative remedies, but it does not support a due process claim under the Fifth Amendment.

Chism's unidentified claim under the First and Fifth Amendment could, alternatively, be construed as asserting that the defendants interfered with his right of access to the courts. This would encompass not only Chism's allegations regarding the handling of his grievances, but also his unheeded requests for a copy of his inmate account statement, postage stamps, and a "legal phone call." [R. 15 at Page ID #106, 110-12]

But such a claim would misfire as well. In its broadest sense, the right of access to the courts guaranteed by the First Amendment requires that inmates have "access to the courts [that] is adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822 (1977). Given the deference afforded to officials in carrying out this and other obligations in the course of managing prison affairs, courts have held that the Constitution does not require the implementation of particular means to satisfy this constitutional command. *Id*. at 830. Therefore, "[b]ecause *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).

Thus, alleging only the deprivation of certain items – such as the postage stamps, inmate account statement, or "legal phone call" at issue here – is insufficient: to establish standing, a prisoner must allege that she was deprived of a particular nonfrivolous claim to state a right-of-access claim. *Lewis*, 518 U.S. at 353. In this case, Chism fails to identify the claim he wished to assert, and his court access claim is therefore subject to dismissal on that ground alone. *Christopher v. Harbury*, 536 U.S. 403, 416 (2002) ("Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant.").

More fundamentally, Chism does not allege in any way that he was deprived of the claim because he was prevented from asserting it. Indeed, the record in this case establishes otherwise. In his complaint, Chism alleges that the various defendants did not provide him with postage stamps, a "legal phone call," or an inmate account statement on June 9, 11, 14, 18, and 20, 2018. [R. 15 at Page ID #105-06, 108-09, 111-12, 115-16] But Chism had already mailed his original complaint in this action on June 6, 2018. [R. 1] He also mailed additional postage-paid letters and motions to the Court on June 13, 20, 22, and 26, establishing that he was not in the least inhibited from prosecuting his claims during this period. See [R. 5-1 at Page ID #30; R. 6-1 at Page ID #36; R. 7-1 at Page ID #40; R. 8-1 at Page ID #42] Chism also mailed a motion to proceed *in forma pauperis* and a certified statement of his inmate account on July 9, 2018 [R. 11, 12], and mailed his amended complaint on July 25, 2018 [R. 15]. Because Chism does not allege that he was impeded in the assertion of his claims in this action and the record establishes that he was not, he lacks standing to assert an access-to-courts claim. *Dellis v. Corr. Corp. of Am.*, 257 F. 3d 508, 511 (6th Cir. 2001).

Finally, Chism contends that several BOP officers displayed deliberate indifference to his serious medical needs in violation of the Eighth Amendment by confiscating his external monitor and refusing to permit him to keep it during his incarceration. [R. 15 at Page ID #119-21] To state a viable claim of deliberate indifference with respect to prison medical care, the inmate must establish that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety, which is to say the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006). This can be show where, for example, medical staff intentionally deny or delay medical care, or intentionally interfere with treatment once prescribed. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

Here, however, Chism alleges no such denial. Instead, he complains that his cardiologist gave him the monitor prior to his incarceration, but that prison staff would not allow him to keep it. In making that decision, the BOP noted that the device's ability to wirelessly communicate data presented a security risk in a prison setting, and that it would not be of assistance because it was programmed to send data not to the BOP doctors managing his medical care but to his former personal cardiologist. [R. 17-1 at Page ID #156-57] In sum, Chism does not allege that he was denied medical care, only that he preferred the course of medical care he was under prior to his incarceration. Where a prisoner merely expresses his disagreement with the course of medical care chosen by his treating physicians in the prison, his claim may sound in state tort law, but it does not implicate the Eighth Amendment. *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law."). Here, Chism's

claim is based upon no more than his disagreement with the conclusion by prison healthcare providers that the device would not be helpful in managing his care. Under such circumstances, no deliberate indifference is shown even if the prisoner disagrees with the sufficiency of the care provided. *Lyons v. Brandly*, 430 F. App'x 377, 379-81 (6th Cir. 2011); see also *Glover v. Corizon Med. Serv.*, No. 6:15-CV-651-AKK, 2016 WL 11268746, at *3-4 (N.D. Ala. Jan. 26, 2016) (claim that defibrillator monitor should have been provided amounted to mere difference of medical opinion that was insufficient to support Eighth Amendment claim), *report and recommendation adopted in pertinent part*, 2017 WL 781763, at *2 (N.D. Ala. March 1, 2017). Because these allegations fail to state a claim under the Eighth Amendment, these claims must be dismissed.

Accordingly, it is **ORDERED** as follows:

1. Cedric Chism's Amended Complaint [R. 15] is **DISMISSED**.
2. Chism's motion for injunctive relief [R. 17] is **DENIED.**
3. This matter is **STRICKEN** from the docket.

Dated March 22, 2019.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY